Lauren H. Leyden (LL-0937)
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (telephone)
(212) 872-1002 (facsimile)

Joshua B. Waxman (JW-6806)
Joel M. Cohn (*Pro Hac Vice*)
William F. Allen (*Pro Hac Vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, NW
Washington, DC  20036-1564
(202) 887-4000 (telephone)
(202) 887-4288 (facsimile)

Attorneys for Defendant Home Depot U.S.A., Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER KOPERA, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>    -against-<br><br>HOME DEPOT U.S.A., INC.,<br><br>               Defendant. | No. 09-cv-08337 (WHP) (HP) |

DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

<u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................... iii

I.     INTRODUCTION ........................................................................................... 1

II.    STATEMENT OF FACTS ............................................................................... 4

       A.     Home Depot Assistant Store Managers .............................................. 4

       B.     ASM Training In New York ................................................................ 5

              1.     Variation in the length of the training period ............................... 6

              2.     Variation in the amount of time spent per day on the Training
                     Guide .................................................................................. 7

              3.     Variation in the nature and number of training stores ................. 8

              4.     Variation in the experience and skills of the ASMs .................... 9

              5.     Variation in store characteristics ........................................... 10

              6.     Variation in the type of ASM position .................................... 11

              7.     Variation in hours worked per day during training ................... 11

              8.     Variation with respect to the key factors pertaining to exempt status ........ 12

III.   ARGUMENT ............................................................................................... 13

       A.     Individual Issues Predominate Over Common Issues ......................... 14

              1.     The use of the self-paced training guide does not provide common
                     evidence that will assist in determining liability because the
                     experiences  of ASMs who used the guide vary markedly ....................... 16

              2.     Home Depot's uniform classification of the New York ASMs does
                     not provide common evidence that will assist in determining
                     liability because it says nothing about whether a given ASM was
                     misclassified ...................................................................... 18

              3.     The other "common evidence" is not common to this class ..................... 19

              4.     The case law does not support a finding of predominance here ............... 21

      B.       A Class Action Is Not Superior .................................................................................25

IV.      CONCLUSION ........................................................................................................25

TABLE OF AUTHORITIES

Page(s)

CASES

*Alix v. Wal-Mart Stores, Inc.*,
    57 A.D.3d 1044, 869 N.Y.S.2d 372 (N.Y. 2008) ...................................................................25

*Ansoumana v. Gristede's Operating Corp.*,
    201 F.R.D. 81 (S.D.N.Y. 2001) ...........................................................................................24

*Bolanos v. Norwegian Cruise Lines Ltd.*,
    212 F.R.D. 144 (S.D.N.Y. 2002) .........................................................................................24

*Cuzco v. Orion Builders, Inc.*,
    262 F.R.D. 325 (S.D.N.Y. 2009) ...................................................................................23, 24

*Damassia v. Duane Reade, Inc.*,
    250 F.R.D. 152 (S.D.N.Y. 2008) .........................................................................................23

*Dauphin v. Chestnut Ridge Transp., Inc.*,
    No. 06 Civ. 2730 (SHS), 2009 WL 2596636 (S.D.N.Y. Aug. 20, 2009) ...................14, 15, 21

*Diaz v. Electronics Boutique of Am., Inc.*,
    No. 04-CV-0840E(SR), 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ..........................21, 22

*Fogarazzo v. Lehman Bros., Inc.*,
    263 F.R.D. 90 (S.D.N.Y. 2009) ...........................................................................................13

*Hendricks v. J.P. Morgan Chase Bank*,
    263 F.R.D. 78 (D. Conn. 2009)............................................................................................20

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
    239 F.R.D. 363 (S.D.N.Y. 2007) ...................................................................................23, 24

*In re Home Depot Overtime Cases*,
    No. E040215, 2007 WL 4128093 (Cal. Ct. App. Nov. 21, 2007) ("Home Depot
    Overtime II").................................................................................................................22, 23

*In re Home Depot Overtime Cases*,
    No. JCCP4229, 2006 WL 330169 (Cal. App. Dep't Super. Ct. Feb. 2, 2006) ("*Home
    Depot Overtime I*"), *aff'd, In re Home Depot Overtime Cases*, No. E040215, 2007
    WL 4128093 (Cal. Ct. App. Nov. 21, 2007) ("*Home Depot Overtime II*") .............................2

*In re Initial Pub. Offerings Secs. Litig.*,
    471 F.3d 24 (2d Cir. 2006)...................................................................................13

*In re Wells Fargo Home Mortgage Overtime Pay Litig.*,
    571 F.3d 953 (9th Cir. 2009) ..............................................................................19

*In re Wells Fargo Home Mortgage Overtime Pay Litig.*,
    No. C 06-01770 MHP, 2010 WL 174329 (N.D. Cal. Jan 13, 2010) .................19, 22

*Jankowski v. Castaldi*,
    No. 01 CV0164 (SJF)(KAM), 2006 WL 118973 (E.D.N.Y. Jan 13, 2006) ...........................24

*Jimenez v. Domino's Pizza, Inc.*,
    238 F.R.D. 241 (C.D. Cal. 2006)..........................................................................22

*Mendoza v. Home Depot*,
    2010 WL 424679 ................................................................................................13

*Mendoza v. Home Depot U.S.A., Inc.*,
    No. CV 09-05843 SJO (JCx), 2010 WL 424679 (C.D. Cal. Jan. 21, 2010).................1, 14, 21

*Mike v. Safeco Ins. Co.*,
    274 F. Supp. 2d 216 (D. Conn. 2003) .................................................................14, 21

*Morisky v. Pub. Serv. Elec. & Gas Co.*,
    111 F. Supp. 2d 493 (D.N.J. 2000) ......................................................................22

*Myers v. Hertz Corp.*,
    No. 02 Civ. 4325 (BMC)(MLO), 2007 WL 2126264 (E.D.N.Y. July 24, 2007) ..........3, 18, 21

*Noble v. 93 Univ. Place Corp.*,
    224 F.R.D. 330 (S.D.N.Y. 2004) .........................................................................24

*Novak v. Home Depot U.S.A., Inc.*,
    259 F.R.D. 106 (D.N.J. 2009)..............................................................2, 14, 22, 25

*Torres v. Gristede's Operating Corp.*,
    No. 04 Civ. 3316(PAC), 2006 WL 2819730 (S.D.N.Y. Sep. 29, 2006).....................23, 24, 25

*Vinole v. Countrywide Home Loans, Inc.*,
    246 F.R.D. 637, 641-42 (S.D. Cal. 2007), *aff'd* 571 F.3d 935 (9th Cir. 2009) .............3, 19, 22

STATUTES AND RULES

N.Y. Comp. Codes R. & Regs. Title 12
    § 142-2.2 ...........................................................................................................12
    § 142.2.14(c)(4)(i)..........................................................................................1, 12, 14

29 C.F.R. § 541.700 ...............................................................................................15

Fed. R. Civ. P. 23 ........................................................................................................13

Fed. R. Civ. P. 23(a) ...................................................................................................13

Fed. R. Civ. P. 23(a)(2) ..........................................................................................13, 21

Fed. R. Civ. P. 23(b) ...................................................................................................13

Fed. R. Civ. P. 23(b)(3) ........................................................................................ passim

Rule 23(a)(3) ...............................................................................................................13

I.      <u>INTRODUCTION</u>

Plaintiff Christopher Kopera seeks certification of a class of Home Depot Assistant Store

Managers ("ASMs") in New York that he alleges is misclassified as exempt from state overtime

requirements during the period when they train for the ASM position after hire or promotion.  He

seeks class certification even though the Central District of California refused to certify a class in

an action that raised *the identical underlying claim* against Home Depot.  *See Mendoza v. Home

Depot U.S.A., Inc.*, No. CV 09-05843 SJO (JCx), 2010 WL 424679 (C.D. Cal. Jan. 21, 2010).  In

plaintiff's memorandum in support of class certification, plaintiff's attorneys, who also brought

the California action, do not even acknowledge the existence of the *Mendoza* decision; they cite

only the notice of removal in that action.  (Plaintiff's Memorandum ("Pl.'s Mem.") at 3.)

Plaintiff claims that New York ASMs are not exempt during their training period because

they do not meet the definition of the executive exemption.  Whether an employee satisfies the

requirements of the executive exemption under New York Labor Law depends on how he spends

his work time, *i.e.*, whether he manages as his primary duty, regularly directs the work of two or

more employees, regularly exercises discretionary powers, and makes recommendations about

hiring, firing, promotion, or other change in status of other employees that are given particular

weight.  N.Y. Comp. Codes R. & Regs. tit. 12, § 142.2.14(c)(4)(i).

Plaintiff seeks class certification under Fed. R. Civ. P. 23(b)(3).  This provision requires

that common, not individual, proof predominate at trial.  Here, plaintiff's claims are not suitable

for class treatment under Rule 23(b)(3) because the pivotal question of how the employees spend

their time in training cannot be resolved predominantly through common evidence.  This is the

same result reached by the district court in *Mendoza*.  The District of New Jersey also recently

denied certification of a proposed class of New Jersey Home Depot ASMs in an action brought

by the plaintiff's attorneys under the executive exemption because "individual issues overwhelm

[plaintiff's] showings." *See Novak v. Home Depot U.S.A., Inc.*, 259 F.R.D. 106, 115 (D.N.J. 2009). And a California appellate court denied class treatment for Home Depot ASMs for the same reason. *See In re Home Depot Overtime Cases*, No. JCCP4229, 2006 WL 330169 (Cal. App. Dep't Super. Ct. Feb. 2, 2006), *aff'd, In re Home Depot Overtime Cases*, No. E040215, 2007 WL 4128093 (Cal. Ct. App. Nov. 21, 2007).

The same result is required here. The training experiences of New York ASMs, including the duties they perform while being trained and the amount of time they spend performing these duties, vary extensively in all key respects. For example, plaintiff claims that, during his training period, he did not manage departments, direct employees, or make recommendations regarding personnel issues like hiring, firing, and promotion. However, other New York ASMs stated that they performed all of these functions during their training period.

This variation means that adjudicating the class claims herein would require examination, on an individualized basis, of the training experience of each class member, including the duties performed by each. In such circumstances, common evidence will not predominate and a class action is not the superior means of adjudicating the matter, as Rule 23(b)(3) requires.

An analysis of the common evidence plaintiff contends he will rely on reinforces this conclusion. First, he notes that New York ASMs all use the same training guide. However, the guide is aptly referred to as the "'SureStart' self-paced training guide." (ex. 25 to Duffy decl. (docket no. 21-26).) As the name confirms, ASMs work through the guide at their own pace, which profoundly affects the extent to which they perform management duties. Thus, although some of the duties set forth in the guide involve managing, ASMs who spend most of their time working on the guide may spend less time engaged in exempt duties than ASMs who spend little time on the guide and instead devote most of their effort to helping run the store. The use of the

training guide therefore does not reduce the need for individual inquiries to determine the actual duties of each putative class member.

Plaintiff also relies on the fact that defendant uniformly classified all New York ASMs as exempt during their training period.  This fact, however, sheds no light on whether any particular ASM trainee was misclassified.  In particular, evidence of *uniform* classification cannot establish *misclassification* on a class-wide basis.  Rather, whether any particular ASM is misclassified can be determined only through individualized inquiry into the actual work performed by each ASM during their training period.  *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009); *Myers v. Hertz Corp.*, No. 02 Civ. 4325 (BMC)(MLO), 2007 WL 2126264, at *5 (E.D.N.Y. July 24, 2007).

Plaintiff alleges that, in general, ASMs trained in a store other than the one to which they would ultimately be assigned and that they learned the requirements of the position mostly from the training manual and by "shadowing" experienced ASMs.  (Pl.'s Mem. at 2.)  However, the evidence demonstrates great variation in these respects.  Some New York ASMs trained almost entirely at the store where they were to be ultimately assigned, some moved around, and some trained mostly at stores designated as training stores.  Moreover, there was significant variation in duties performed, even among ASMs who received training at similar stores.  For example, the training experiences of ASMs differed substantially with respect to how much they "shadowed" veteran ASMs.  Some stated that they spent considerable time "shadowing" experienced ASMs; however, other ASM trainees stated that they did little or none of this.  Thus, individual inquiries will be required.  In sum, even after plaintiff has presented his common evidence – the training manual, that Home Depot classified ASM trainees as exempt, the existence of training stores, and the use of "shadowing" as a training technique – the jury will remain unable to decide the

key questions regarding how potential class members actually spent time during their training

periods.  Since individualized evidence predominates this inquiry, Rule 23(b)(3) is not satisfied,

and certification should be denied.

II.     STATEMENT OF FACTS

        A.      Home Depot Assistant Store Managers

        Home Depot stores typically are managed by a store manager and more than one ASM.

(Declaration of Bill Love ("Love decl.") ¶ 3, filed concurrently herewith.)  The number of ASMs

varies from two to seven depending on such factors as the size of the store, its hours of operation,

sales volume, number of employees, and the experience level of its managers.  (*Id.*)  Some ASMs

are external hires, but the majority of ASMs are promoted internally, typically from a department

supervisor position.  (*Id.*)  In general, because Home Depot "hire[s] to the opening," employees

are either hired or promoted to a new ASM position only once there is an actual ASM "opening

to fill."  (Love dep. at 62, 96-97.[1])  Consequently, "[o]nce someone vacates a position, you then

backfill that position and start training that person," while the new ASM is "also running their

departments."  (*Id.* at 62, 76, 96-97.)

        ASMs are directly responsible for the operations of two to six Home Depot departments

and/or certain store operations such as receiving and freight, cashiers, phone center, returns, and

special services.[2]  (Love decl. ¶ 5.)  The duties of each ASM vary significantly depending on the

unique circumstances of the ASM and his store.  (*Id.* ¶ 4.)  These duties typically include, among

others, interviewing applicants, making hiring recommendations and staffing decisions, training

---

[1]  Relevant excerpts from cited depositions, declarations, and documents, unless otherwise noted,
are attached to the Declaration of Joshua Waxman ("Waxman decl."), filed herewith.

[2]  Stores in general are divided into 11 merchandising departments and, as noted, several non-
merchandising departments such as the front end, where cashiers work.  Love decl. ¶ 3.

employees, checking and ordering inventory, evaluating department and employee performance, overseeing safety and security, administering discipline, and overseeing customer service, and controlling loss of inventory.  (*Id.*)

Home Depot has several different types of ASMs.  Merchandising ASMs manage several merchandising departments such as hardware, flooring, and garden.  (*Id.* ¶ 5.)  Operations ASMs are responsible for the general business operations of the stores.  (*Id.*; Hartman dep. at 38; ex. 10 to Duffy decl. (docket no. 21-11).)  Specialty ASMs are responsible for departments that focus on special sales, such as home installations.  (Love decl. ¶ 5.)  Finally, some stores also have night operations ASMs.  (*Id.*; Stanley dep. at 70-71.)

B.    ASM Training In New York

Home Depot stores in New York fall within the New York Metro Region, the Ohio Valley Region, and two districts in the New Jersey Metro Region.  (Miller dep. at 9-10; Stanley dep. at 22; Hartman dep. at 19-20.)

Since late 2005, Home Depot has trained ASMs using the "SureStart" training program. (Love dep. at 32-33.)  The program consists of two primary components.  One component is a classroom session that usually lasts one week.  (*Id.* at 51-52, 66.)  The session each day lasts no more than eight hours, excluding time spent on lunch and rest periods.  (Miller dep. at 17-18; Love dep. at 39.)  Plaintiff has admitted that his one week of classroom training did not cause him to work more than 40 hours.  (Declaration of Christopher Kopera ("Kopera decl.") (docket no. 21-12) ¶ 15.)

The second component is in-store training through the use of a self paced "SureStart Assistant Store Manager Guide" ("training guide").  (Love dep. at 37.)  This self-paced guide consists of 13 modules.  (Stanley dep. at 62.)  ASMs generally, but not necessarily, complete all

13 modules.  (*Id.* at 63.)  In fact, some ASMs need to manage full-time before they are able to complete the training program.  (Love dep. 92-93.)

ASMs typically do not spend their entire day on the training guide; indeed, some spend little time per day on it.  (Pepper decl. ¶ 7.)  This leaves them free to perform traditional ASM functions, and they do so.  (McCrea decl. ¶ 10; McCarren decl. ¶ 10; Ingra decl. ¶ 7.)  Moreover, because the modules in the training guide relate so closely to the ASM's managerial duties, it is often difficult to distinguish the training activities from "regular" ASM work.  For example, one of the training modules asks the ASM to record occasions when they provide positive feedback to department associates.  (Eisenbach decl. ¶ 6.)  ASMs complete this part of the module simply by performing their ordinary ASM duties.  (*Id.*)

Although all ASMs therefore perform managerial tasks during their initial training, there is significant variation in the duties they perform and the amount of time they spend performing these duties.  The primary factors that produce this variation are:  (1) the length of the training period, (2) the amount of time spent per day working on the training guide, (3) the location[s] of the in-store training, (4) the experience and skills of the individual ASM receiving training, (5) store characteristics, and (6) the type of ASM position involved.

         1.      <u>Variation in the length of the training period</u>

Home Depot expects that the length of time required to complete the training program for new ASMs will vary from two to 14 weeks depending on the individual.  (Stanley dep. at 39-40); (Miller dep. at 17) (length of training "varies by person, by store, by experience").  The evidence confirms that this is the approximate range of training time in New York.  Samuel Joseph stated that he completed his in-store training in three to four weeks, while Robert McCarren recalls that it took him approximately 13 weeks.  (Joseph decl. ¶ 4; McCarren decl. ¶ 4.)  Other ASMs stated that their initial training fell within this range.  *See* McCrea decl. ¶ 6 (five to six weeks); Pepper

decl. ¶ 4 (two months); Uwhubetiyi decl. ¶ 4 (six weeks).[3]

The evidence also shows variation in the amount of time spent by ASMs on managerial duties during their training.  Michael Ingria trained for only four weeks, but spent most of that time performing "regular ASM duties."  (Ingria decl. ¶¶ 4, 9-10.)  He was able to spend much less time than recommended on the training modules, because Ingria had prior experience as an ASM.  (*Id.* ¶¶ 3, 6, 8.)  By contrast, plaintiff states that he trained for six weeks, yet claims that he "had no managerial duties."  (Kopera decl. ¶¶ 15, 24.)

2.    Variation in the amount of time spent per day on the training guide

The evidence shows wide variation in the amount of time ASMs spend per day on the training guide.  Raymond Pepper spent about one hour per day.  (Pepper decl. ¶ 7.)  He spent most of the remainder of his time performing management functions.  (*Id.* ¶¶ 9, 11.)  Lynn Eisenbach spent most of her day supervising associates and performing management duties at one of the stores where she trained, but at her two other training stores she primarily reviewed training materials and observed others.  (Eisenbach decl. ¶ 4.)  But some ASMs informed Home Depot during their classroom training that they never even received a copy of the training guide.  (Hartman dep. at 87; Stanley dep. at 38; Donadio decl. ¶¶ 9-10) (received training guide for the first time at classroom training but never used it in the store).

---

[3]  Plaintiff notes that the training guide estimates that the training program will take 230 hours to complete and will be completed in four weeks or approximately 55 hours per week.  (Pl.'s Mem. at 9.)  However, the record makes clear that, in practice, there is significant variation in how long it takes to complete the training program.  As noted, the training program often takes more than four weeks to complete and many ASMs work less than 55 hours per week during training.  *See* Part II-B-7 below.  Finally, depending on their backgrounds, some ASMs require less time than the amount suggested in the training guide to complete the training modules.  (Uwhubetiyi decl. ¶ 7; McCarren decl. ¶ 7.)

### 3.    Variation in the nature and number of training stores

Some ASMs train at the store where they have been permanently assigned,[4] some train at a "training store";[5] still others train at a number of different stores, learning different aspects of the ASM job at each.[6]  *See also* Stanley dep. at 71-72 (variation "based on the business" need as to whether new ASMs go to training store or their assignment store); Hartman dep. at 23 (varies based on previous experiences, previous departments supervised, the position training for, their store manager, business need, and the expectations of the district manager and human resource manager).  This factor affects the training experience.  ASMs working in the store to which they have been permanently assigned tend to step right into the managerial role.  (Ingra decl. ¶¶ 4, 6.) However, ASMs assigned to a training store may also perform significant managerial work.  For instance, Lawrence Uwhubetiyi spent six weeks at a training store.  During that time, he devoted only two or three hours a day to working on training modules, and regularly performed the same managerial duties as after he completed his training.  (Uwhubetiyi decl. ¶¶ 4, 7-9.)  By contrast, plaintiff claims that he performed no managerial tasks at his training stores.  (Kopera decl. ¶ 24.)

The experiences of ASMs who trained at several stores also varied.  Courtney McCrea trained at three different stores.  (McCrea decl. ¶ 4.)  Even though he was still "familiarizing" himself with the stores, McCrea "was constantly acting as a manager," and handling duties and responsibilities that are "generally the same as [her] current duties as an ASM."  (*Id.* ¶ 9.)  By contrast, Tracyann Austin also trained at several different stores, but she was far less active on

---

[4]  Ingra decl. ¶ 4; McCarren decl. ¶ 4; Gagliardi decl. ¶ 4.

[5]  Love dep. 93-94; Uwhubetiyi decl. ¶¶ 3-4.  Stores in the Hudson Valley use specific training stores for ASM training; the New York Metro Region does not have training stores per se to use for in-store ASM training.  (Stanley dep. at 53-54; Hartman dep. at 70-71.)  According to Home Depot's Director of Learning Solutions, only approximately 20 percent of ASMs are trained at designated training stores.  (Love dep. at 92.)

[6]  Joseph decl. ¶ 4; Austin decl. ¶ 4.

the sales floor than McCrea.  (Austin decl. ¶¶ 4, 6.)

              4.        <u>Variation in the experience and skills of the ASMs</u>

New ASMs bring a variety of backgrounds and skill levels to the job.  Most are promoted from within Home Depot (Hartman dep. at 39), but some are hired from outside (Love decl. ¶ 3), and some have served as Home Depot ASMs in the past.  (Ingria decl. ¶ 3.)

Because new ASMs come from "all different parts of the store" (Miller dep. at 46), skill and experience levels differ among those promoted from within Home Depot.  (Hartman dep. at 36; Stanley dep. at 83)  For example, a new ASM with experience working in the front end of the store may already know how to manage that portion of the store.  (Miller dep. at 46.)  The same is true for those with experience in receiving or merchandising.  (*Id.* at 47.)  Training experiences vary accordingly.  (Hartman dep. at 36; Stanley dep. at 83.)

Some department supervisors spend considerable time being groomed for promotion to the ASM position.  Raymond Pepper explained that "[m]ost of my training for the ASM position took place before I was even promoted, through on-the-job training as a department supervisor" since "my ASMs worked closely with me to prepare me for promotion."  (Pepper decl. ¶ 10.)  Pepper "was able to sit in on interviews as a department supervisor" and "coach and counsel employees," and thus "was prepared to take on these responsibilities" upon being promoted to ASM.  (*Id.*)  But not all newly promoted ASMs have this much on-the-job training.

These differences affect what ASMs do while they are in training.  As a result of having previously been a Home Depot manager, Michael Ingria's store manager trusted him to manage and Ingria thus was able to "manag[e] the entire store" during his training period.  (Ingria decl. ¶ 6.)  Robert McCarren, who had not worked for Home Depot before, but had 30 years of retail experience, also was able to "hit the ground running" and consequently was "acting as manager from day one."  (McCarren decl. ¶ 9.)

This also tended to be true for those former Home Depot department supervisors who received extensive mentoring.  Raymond Pepper estimates that, during his training period, he spent 75 to 80 percent of his time managing and only one hour per day on training activities. (Pepper decl. ¶ 14.)  But other ASMs who were promoted from department supervisor did not immediately manage to this extent.  (Eisenbach decl. ¶¶ 3, 10) (spent about 50 percent of her time performing management duties and 50 percent completing training activities).

         5.    <u>Variation in store characteristics</u>

The duties performed by ASMs during their training period vary depending on the store. Lynn Eisenbach, who trained at three stores, recalls that "my training experience in Store #6176 was vastly different from my training experience at the other two stores."  (Eisenbach decl. ¶ 4.) In store #6176, Eisenbach " performed many hands-on functions and supervised associates."  But at "the other two stores," she "primarily observed others and read . . . training materials."  (*Id.*) Similarly, Samuel Joseph, who trained at four stores, recalled that "my training experience varied depending on the individual store and even the person who was training me."  (Joseph decl. ¶ 4.) In some stores he spent more time "reading and studying about [his] ASM responsibilities" while in others he spent more time on the floor performing managerial duties. (*Id.*)

The variation in the training experience from store-to-store stems from variation in store characteristics, personnel, and staff.  David Hartman, Home Depot's Regional Learning Manager for the New York Metro Region, testified that the self-paced training experience of new ASMs in his region varied "based upon which store manager's [were] training [them], the expectations of the district manager, the district human resource manager and also the need[s] of the business." (Hartman dep. at 23.)  Steven Stanley, the Regional Learning Manager for the New Jersey Metro Region, which encompasses two districts in New York state, testified that the training experience

depends in part on how the store where training occurs is staffed and its business needs.  (Stanley dep. at 30.)

The volume of business a store handles also affects the management experience, which in turn affects the training experience as well.  Raymond Pepper began training at a high-volume store, but was transferred to a low-volume store to complete his training, because that store more closely resembled the store to which he was ultimately going to be assigned. (Pepper dec. ¶ 4.)

6. <u>Variation in the type of ASM position</u>

Home Depot has three types of ASMs:  operations, merchandising, and specialty ASMs.  (Stanley dep. at 70.)  In addition, some stores have a night operations ASM.  (*Id.* at 71.)

The training varies depending on which type of ASM position is involved.  (Hartman dep. at 23.)  In fact, although ASMs in all of these categories typically receive the training guide and participate in the classroom training program, operations ASMs, who perform more "complex" responsibilities (Love dep. at 82), receive their own self-paced guide to complete in addition to the regular self-paced guide, as do night operations ASMs.  (Stanley dep. at 71.)  The operations guide focuses more on operations than the main training guide which focuses on merchandising.  (Hartman dep. at 38.)

7. <u>Variation in hours worked per day during training</u>

Whether putative class members worked overtime is a threshold question.  The training experiences of Home Depot ASMs in New York show clear variation as to this key issue.

Christopher Kopera, the named plaintiff, says he worked 55 hours per week during his in-store training period.  (Kopera decl. ¶¶ 18, 20-22; *see also* Ingria decl. ¶ 5 (40 to 50 hours) and Uwhubetiyi decl. ¶ 5 (45 hours).)  By contrast, Samuel Joseph and Tracyann Austin worked only 40 hours per week while being trained.  (Joseph decl. ¶ 5; Austin decl. ¶ 9.)  Some ASMs worked more than 40 hours during some training weeks, but not others.  (Pepper decl. ¶ 5.)

8.      Variation with respect to the key factors pertaining to exempt status

The executive exemption depends upon whether the employees in question (i) have as their primary duty managing the enterprise or a recognized department or subdivision thereof, (ii) customarily and regularly direct the work of at least two other employees, and (iii) make recommendations about hiring, firing, or promotion that are given particular weight.  12 N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.14(c)(4)(i).[7]  Plaintiff maintains that he did none of these things.  If so, his experience was materially different from other ASM trainees who he seeks to represent.

First, Rocco Ingra stated that, immediately upon his promotion, he "was assigned to oversee three departments:  lumber, building material[s], and millwork."  (Ingra decl. ¶ 7.)  Similarly, Joseph Gagliardi, states that during his initial training period he supervised three departments.  (Gagliardi decl. ¶ 6.)  Both also asserted that managing was their primary duty throughout their training periods.  (Ingra decl. ¶ 7; Gagliardi dec. ¶ 7.)

Second, Raymond Pepper supervised "roughly 300 employees storewide" as an ASM trainee.  (Pepper decl. ¶ 11.)  Gagliardi supervised approximately 27.  (Gagliardi decl. ¶ 6.)

Third, at his training store, Lawrence Uwhubetiyi was responsible for interviewing and hiring applicants, and his recommendations were followed by the store manager.  (Uwhubetiyi decl. ¶ 12.)  In addition, he recommended the promotion of an associate and that associate was promoted.  (*Id.* ¶ 11.)  Similarly, Courtney McCrea also made effective hiring recommendations during his training period (McCrea decl. ¶ 11), while Joseph Gagliardi interviewed and hired several associates and terminated another.  (Gagliardi decl. ¶ 8); *see also* Stanley dep. at 85-86

_____

[7]  New York law regarding the payment of overtime is interpreted pursuant to the guidelines set forth under federal law.  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.

("how much management and leadership opportunities" ASMs in training have with respect to interviewing and hiring is "really at the store manager's discretion").

III.   <u>ARGUMENT</u>

The party seeking class certification bears the burden of demonstrating that it has met all four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).  *In re Initial Pub. Offerings Secs. Litig.*, 471 F.3d 24, 40 (2d Cir. 2006).  The Second Circuit has made clear that, before certifying a class, the court must conduct a "rigorous analysis" to ensure that every Rule 23 requirement has been satisfied.  *Id.* at 32-33, 41.  In determining whether a plaintiff has met this burden, the court should not accept all allegations in the complaint as true, but instead "must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met."  *Id.*

Plaintiff seeks certification under Rule 23(b)(3), which permits certification only when common questions of law or fact predominate over questions affecting only individual members of the class *and* a class action is superior to other methods for fairly and efficiently adjudicating the controversy.  Here, the evidence demonstrates that common issues do not predominate over individual questions and that a class action is not the superior means of adjudication.

For these same reasons, plaintiff cannot satisfy the requirements of Rule 23(a)(2) or (3).  Plaintiff also cannot satisfy the typicality requirement of Rule 23(a)(3) with respect to the claim that ASMs are denied overtime during their classroom training.  Plaintiff admits that he did not work any overtime during this period.  Thus, his claim for overtime is not typical of the claim he asserts on behalf of a class in this respect.  *See Mendoza v. Home Depot*, 2010 WL 424679, at *6; *Fogarazzo v. Lehman Bros., Inc.*, 263 F.R.D. 90, 96 (S.D.N.Y. 2009) ("A lack of typicality may be found in cases where the named plaintiff 'was not harmed by the [conduct] he alleges to have injured the class'. . . .") (internal citation omitted).

A.    Individual Issues Predominate Over Common Issues

Rule 23(b)(3) requires that "the issues in the class action that are subject to generalized proof . . . predominate over those issues that are subject only to individualized proof." *Dauphin v. Chestnut Ridge Transp., Inc.*, No. 06 Civ. 2730 (SHS), 2009 WL 2596636, at *3 (S.D.N.Y. Aug. 20, 2009), quoting *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001).  This requirement is not satisfied where there is a "strong possibility" that "the fact-finder may have to determine defendants' liability on a [class member-by-class member] basis." *Dauphin*, 2009 WL 25966636, at *3.

Here, liability will have to be adjudicated class member-by-class member.  Whether each potential class member was properly classified must "be determined on the basis of whether his duties [and] responsibilities" satisfy all the requirements of the applicable regulations. *Mike v. Safeco Ins. Co.*, 274 F. Supp. 2d 216, 220 (D. Conn. 2003), quoting 29 C.F.R. § 541.2(b)(2); *see Mendoza v. Home Depot*, 2010 WL 424679, at *7-9 (common issues do not predominate due to variations in duties performed by Home Depot ASMs during their training periods); *Novak v. Home Depot*. 259 F.R.D. at 115 (individualized evidence predominates in examining duties of Home Depot ASMs).

The regulations applicable to the executive exemption require that an employee (1) be compensated on a salary basis at a rate not less than $543.75 per week, (2) have management of the enterprise or a recognized department or subdivision as his primary duty, (3) customarily and regularly direct the work of two or more other employees, (4) customarily and regularly exercise discretionary powers, and (5) make recommendations as to the hiring, firing, promotion, or any other change of status that are given particular weight.  12 N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.14(c)(4)(i).  Thus, the question of liability for each would-be class member requires an

inquiry into whether the individual class member had management as his primary duty, directed at least two employees, exercised discretion, and made certain recommendations.  Where the employee performs exempt work less than 50 percent of the time, the "primary duty" issue also considers such factors as the relative importance of exempt duties compared to other duties, the amount of time spent performing exempt work, relative freedom from direct supervision, and the relationship between the employee's salary and the wages of certain nonexempt employees.  29 C.F.R. § 541.700.  Finally, liability also requires an inquiry into whether putative class members actually worked overtime.

Since the obvious way to resolve these issues is to examine them on an individualized basis, the inquiry quickly devolves into an assessment of how each class member spends his or her workday and individualized proof thus predominates.  *See Dauphin*, 2009 WL 2596636, at *4.  Therefore, the question is whether plaintiff can show that an alternative method involving common proof exists for determining how class members spend their training time.  Because, however, there is no such shortcut in this action, individualized proof predominates.

Plaintiff points to three forms of common proof:  (1) the self-paced training guide which sets forth the modules ASMs in New York are expected to complete during training, (2) the fact that Home Depot uniformly classified ASMs in training as exempt, and (3) the fact that, in some instances, ASMs trained at "training stores" by "shadowing" other ASMs.  The first two forms of proof will not enable plaintiff to demonstrate what duties *individual* ASMs perform during their training periods.  The third form of proof is not a basis for class certification here, because there is material variation in where New York ASMs train, whether they engage in "shadowing," and other variables that affect how ASMs in training spend their actual time in the stores.  For these reasons, plaintiff cannot show that common issues predominate.

1.    The use of the self-paced training guide does not provide common evidence because the experiences of ASMs who used the guide vary markedly

Since 2005, most, but not every, new ASM in New York has received the training guide. (Hartman dep. at 87; Stanley dep. at 38.)  The guide contains 13 modules that new ASMs are expected to complete.  (Stanley dep. at 62.)  However, not all new ASMs in New York complete all 13 modules, and some never complete the guide at all.  (*Id.* at 63; Donadio decl. ¶ 10.)  Some begin to complete it only once they receive a copy at their classroom training several weeks into their training period.  (Gaskin decl. ¶ 11.)

But even if all ASM trainees completed all 13 modules, it would still not be possible to establish how they spent any workweek based on this common evidence.  Because the training guide is self-paced, in a given work week, an ASM can spend as little or as much time as he or she wishes working on the modules.  As the Regional Training Manager for the New York Metro Region testified, "[ASM] training is not cookie cut in any respect.  It's not supposed to be.  This [is] not the design."  (Hartman dep. at 36.)  In short, the training guide permits each new ASM to have varied training experiences, and the evidence confirms that they do.

First, there is wide variation in the amount of time ASMs spend per day working on the training guide.  *See* part II-B-2 above.  Some say they work on it most of the day; others say they work on it only for about one hour.  Because some of the training exercises are indistinguishable from traditional managerial work, the former group will spend their days performing a mixture of managerial and non-managerial work.  The latter group is free to spend almost the entire day managing, and many of them do.  The training guide, therefore, provides very little insight into the extent to which ASMs perform managerial duties on a daily basis.

Second, there is wide variation in the type and number of stores where ASMs train.  *See* part II-B-3 above.  Some train where they will ultimately manage, some train at "training stores,"

and some train at multiple stores.  Those in the first group tend to manage from the outset.  Those who train in training stores may also do so, but usually not to the same degree.  The experiences of those who move from store to store vary depending on the store in question.

Third, there is wide variation in the experience and skills that new ASMs bring to the job, and these differences affect how they spend their time during in-store training.  *See* part II-B-4 above.  For example, a former ASM like Michael Ingria was able to manage the entire store from the outset and continued to do so throughout his training period.  So was Robert McCarren, who had 30 years of retail merchandising experience, and Raymond Pepper, who was groomed for the ASM job while he was still a department supervisor.  By contrast, plaintiff Kopera contends that, although he had previous retail managerial experience, he was not performing managerial tasks during his training period.  (Kopera decl. ¶¶ 8, 24.)

Fourth, ASM training experience varies depending on the characteristics of the store or stores where the training occurs.  *See* part II-B-5 above.  Such variation results in differences in the practices of store managers, store staffing, and volume of business.  (*Id.*)

Finally, the potential class consists of different types of ASMs.  *See* part II-B-6 above.  Training experiences vary depending on which type of ASM is being trained.  As noted, two of the ASM positions in question had their own unique self-paced training guide in addition to the guide plaintiff asserts he will rely on to prove liability on the basis of common evidence.

The "class period" for which plaintiff seeks certification begins in 2003 and thus is not co-extensive with the period during which the SureStart program has been in place.  Before the inception of SureStart in 2005, Home Depot used a different self-paced training guide and ASM training was less structured and more "loose" and "hit and miss" than afterwards.  (Stanley dep. at 36-38; Love dep. at 56; ex. 24 to Duffy decl. (docket no. 21-25.)  Some ASM trainees "took

advantage and some did not" of pre-SureStart training.  (Love dep. at 56; *compare* Gagliardi decl. ¶ 4 (never sent to a training store) *with* Uwhubetiyi decl. ¶¶ 4, 6 (sent to training store to complete guide).)  Given the less structured and more individualized training provided to ASMs prior to SureStart, class treatment for this time period is, if anything, even less appropriate than for the SureStart period.

All of this variation renders it impossible for plaintiff to try the key issues in this case – whether ASMs worked overtime during their training periods and whether they performed the functions that satisfy the executive exemption – through common evidence.  Plaintiff contends that he worked 55 hours per week during his training, never managed departments or directed employees, and never was involved in personnel decisions such as hiring and firing.  By contrast, other potential class members have stated that they (1) had managerial tasks as their *primary job duties*; (2) worked 40 hours per week or less; (3) managed departments during their training or even the entire store; (4) regularly supervised multiple employees, and (5) made effective hiring, firing, or promotion recommendations.  *See* part II-B-7- 8.  Given these undisputed differences on such critical matters, the common training guide will not enable the trier of fact to determine which ASMs qualify for the executive exemption and which, if any, do not.

> 2.   Home Depot's uniform classification of the New York ASMs does not provide common evidence that will assist in determining liability because it says nothing about whether a given ASM was misclassified

Plaintiff argues that because Home Depot classified all its New York ASMs as exempt during their training period without a case-by-case analysis, individualized evidence will not be needed at trial.  However, "this reasoning is superficial."  *Myers,* 2007 WL 2126264, at *5.  As in *Myers*, the issue of liability will not turn on what the employer "did or did not do vis-à-vis the entire class, but rather on what each member of the class does on a daily basis."  *Id.*  Plaintiff cannot show what duties an individual class member performed by showing that Home Depot

classified that individual as exempt pursuant to a uniform classification. Thus, even if it was a mistake for defendant to classify ASMs uniformly, the issue of whether a given ASM has been correctly classified remains undecided and can be resolved only through individualized proof.

The Ninth Circuit has similarly rejected the argument that uniform classification provides the common evidence needed to support a finding of predominance under Rule 23(b)(3). In *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d 953, 957-58 (9th Cir. 2009), the trial court noted "serious issues regarding individual variations among job duties and experiences" of the workers at issue, but nonetheless concluded that common questions predominated, because the company treated the employees as sufficiently homogenous to classify uniformly as exempt. The Ninth Circuit reversed because the existence of "the blanket exemption policy does nothing to facilitate common proof on the otherwise individualized issues." *Id.* at 959; s*ee also Vinole*, 571 F.3d at 946 (same). On remand, the district court ruled that the class could not be certified because, in light of the variations in the relevant experiences of its members, common evidence would not predominate. *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, No. C 06-01770 MHP, 2010 WL 174329, at *7 (N.D. Cal. Jan 13, 2010)

The same is true here. The training experiences of New York ASMs differ in virtually all key respects. In these circumstances, defendant's uniform classification will not enable the fact finder to decide the exemption issue on a class basis.

### 3.    The other "common evidence" is not common to this class

Plaintiff asserts that "numerous ASMs" who have been deposed all "tell the same story" – that the training period "was approximately 8 weeks long, was held in a store other than the store to which they were assigned as ASMs . . . and involved mainly learning from the training manual and 'shadowing' the ASMs assigned to the stores" where ASM training occurred. (Pl.'s Mem. at 2.) However, plaintiff relies solely on the testimony of ASMs who worked outside of New York

or who trained in New York before the class period – in other words, non-class members.  (*Id.* at 6.)[8]  The testimony of non-class members is of little or no value in assessing the situation of the class.  *See Hendricks v. J.P. Morgan Chase Bank*, 263 F.R.D. 78, 87 (D. Conn. 2009).

Moreover, the testimony of one New York ASM who plaintiff cites, John Clougher, does not support plaintiff's position.  Clougher, who trained outside the class period of this litigation, stated that (1) he performed the duties of the ASM position while he was in training and (2) the training experiences of his fellow ASMs were varied.  (Clougher dep. (docket no. 21-13) at 68.)

In fact, New York ASMs had nothing like the common experiences that plaintiff alleges.  Training was *not* approximately eight weeks long for all ASMs.  Rather, it ranged from three or four weeks to 13.  *See* part II-B-1 above.  The training did *not* necessarily occur in a store other than the one to which the ASM would later be assigned.  *See* part II-B-3 above.  The extent to which training involved learning from a common manual varied significantly from one hour to most of the day.  *See* part II-B-2 above.  And, although some ASMs say they mostly shadowed another ASM, others insist that they functioned as managers to about the same extent that they did after they completed their training.  *Compare* Kopera decl. ¶¶ 14, 18-22 *with* Ingra decl. ¶ 6 *and* Uwhubetiyi decl. ¶ 8.

In short, the evidence shows that common evidence will not predominate at trial.  Instead, individual testimony will be required to discern the relevant training experiences of each ASM.

---

[8]  Alexander Calderon, Ahmed Elmaghraby, and Edward Novak worked in New Jersey; Keith Quint and Joel Weinstein worked in Florida and New Hampshire, respectively; while Edward Spadoni, Arthur Amash, and John Clougher trained in New York before July 1, 2003.  *See* exs. 20, 21, 22, & 23 to Duffy decl. (docket nos. 21-21, 21-22, 21-23, 21-24) and exs. Q, R, S, & T to Waxman decl.

4.      The case law does not support a finding of predominance here

Plaintiff asserts that federal courts routinely certify misclassification claims.  (Pl.'s Mem. at 12.)  Yet, he neglects to point out that in *Mendoza v. Home Depot*, the district court refused to certify the *identical* claim that Home Depot misclassified California ASMs during their training period.  2010 WL 424679, at *9.  The court explained that Home Depot's uniform classification of ASMs during training would do little to assist in resolving the individualized issues pertaining to how the ASMs spent their time, making it "likely that each . . . training ASM's experience is unique."  *Id*. at *7-8.  The court further noted that the training guide does not suggest uniformity in the training experiences of ASMs because the evidence demonstrated significant variation in how ASMs in training utilized the guide, "reflect[ing] that the responsibilities and duties of . . . training ASMs vary significantly and depend on a variety of factors."  *Id.* at *8-9.  Based upon this variation, the court ruled that common issues do not predominate.  *Id.* at *9.  This result is also proper here.

In fact, courts routinely deny class certification in exemption actions where the focus at trial will be on the work experiences of each class member.  In *Dauphin*, where the primary issue was the extent of plaintiffs' interstate travel and the evidence established wide variation on this point, the court denied class certification.  2009 WL 2596636, at *3-4.  In *Myers*, where "proof of liability" depended on "what each member of the class does on a daily basis," the court found that the commonality requirement of Rule 23(a)(2), which imposes a less stringent standard than Rule 23(b)(3), was not satisfied.  2007 WL 2126264, at *5.

In *Mike*, the district court denied class certification because the central liability issue was "whether the balance of tasks Mike performed on a day-to-day basis were administrative or non-administrative" and this determination would require "a careful factual analysis of the full range of the employee's job duties and responsibilities."  274 F. Supp. 2d at 220.  In *Diaz v. Electronics*

21

*Boutique of America, Inc.*, No. 04-CV-0840E(SR), 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005),

the court held that "commonality" did not exist because determining plaintiffs' status "requires a

detailed factual analysis of his daily activities and responsibilities, [and] so does a determination

of every [class members'] exempt or nonexempt status." *Id.* at *4, *6.[9]

      Courts have often refused to certify classification actions involving Home Depot ASMs

for the same reasons.  In addition to the *Mendoza* decision, the federal district court in *Novak v.*

*Home Depot* denied class certification of a claim challenging the exempt classification of Home

Depot's ASMs in New Jersey brought by Kopera's attorneys.  *See Novak*, 259 F.R.D. at 116-18.

The court held that the plaintiff failed to show that common issues predominated or that class

treatment was a superior method, explaining that "the actual day-to-day duties of a MASM are

not nearly as uniform as their job description" and that their testimony showed that their actual

job duties were "widely diverse."  *See id*. at 110, 116-17.

      Similarly, a California appellate court rejected class action treatment for Home Depot

ASMs in California.  The court affirmed the lower court's finding that "[i]n many ways, each

store is unique [and that] [d]ifferent MASMs supervise different numbers of associates and

departments. . . . The nature of the work changes from department to department . . . ."  *Home*

*Depot Overtime,* 2007 WL 4128093, at *5.  The court explained that the trial court found that

variations in department assignments, staffing, turnover, and experience affected the MASMs'

---

[9]  Courts outside the Second Circuit have denied class certification in exemption actions that turn
on the day-to-day activities of putative class members.  *See Vinole v. Countrywide Home Loans,*
*Inc.*, 246 F.R.D. 637, 641 (S.D. Cal. 2007), *aff'd* 571 F.3d 935 (9th Cir. 2009); *Weigele v. Fedex*
*Ground Package Sys., Inc.*, No. 06-CV-1330-JLS (POR), 2010 WL 1337031, at *8 (S.D. Cal.
Apr. 5, 2010); *Spainhower v. U.S. Bank Nat'l Ass'n*, No. 2:08-CV-00137-JHN-PJWx, 2010 WL
1408105, at *4 (C.D. Cal. Mar 25, 2010); *In re Wells Fargo Home Mortgage Overtime Pay*
*Litig.*, 2010 WL 174329, at *7; *Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 253 (C.D. Cal.
2006); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 500 (D.N.J. 2000).

duties and authority.  *Id.*  The appellate court concluded that the "disputed issue, whether the proposed class is exempt from overtime wage laws, involves individual questions of fact that predominate over common issues, rendering class action treatment inappropriate."  *Id*. at *1.

Plaintiff relies on *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008). There, the court found predominance based on (1) the work of the assistant store managers of a drug store chain was governed by a single set of rules that applied uniformly at all stores and (2) this uniformity was corroborated by a store manager who testified that the duties of the assistant managers at all five stores where he worked were substantially the same.  *See* 250 F.R.D. at 159. But here the document used by ASMs during their training period is a self-paced guide that does not impose uniformity and instead engenders individuality.  In sum, there is no testimony that all, or even most, ASMs have uniform training experiences.  Rather, the testimony shows exactly the opposite:  a lack of uniformity.

In *Damassia*, the court discounted declarations submitted by the defendant because they were all identical and inconsistent with the deposition testimony.  250 F.R.D. at 159-60.  Here, the declarations submitted by defendant show a broad range of training experiences and are not inconsistent with deposition testimony from assistant managers in New York.  As noted, one such deposition proffered by plaintiff – that of John Clougher – describes a training experience unlike plaintiff's and acknowledges that the training experiences of New York ASMs were not uniform.

In addition, plaintiff relies on *Cuzco v. Orion Builders, Inc.*, 262 F.R.D. 325 (S.D.N.Y. 2009), *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007), and *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316(PAC), 2006 WL 2819730 (S.D.N.Y. Sep. 29, 2006).  (Pl.'s Mem. at 12-13.)  These decision do not assist plaintiff.  In *Cuzco*, the defendant argued that it was not required to pay overtime because the hourly rate was intended to include

an overtime component. 262 F.R.D. at 330. A common question of liability – namely whether defendant's method of calculating the regular rate – predominated, because variations in hours worked pertained to damages, not to liability. *Id.* at 334-35. Here, the factual variation in the duties of ASM trainees is directly related to the issue of liability.[10]

In *Iglesias-Mendoza*, plaintiffs were migrant farm workers who alleged they were not paid the minimum wage or overtime even though they worked up to 84 hours per week. 239 F.R.D. at 366. In certifying a class, the court found the differences in specific tasks performed by class members – *i.e.*, which animals they worked with and whether they fed, slaughtered, or packaged the animals – to be irrelevant to their underlying claim that defendant refused to pay them a minimum wage and for overtime. *Id.* at 371. Here, however, the underlying issue is the extent to which Home Depot's ASMs managed, supervised, and participated in certain personnel decisions during their initial training period. As shown, individual factual differences relating to these questions are dispositive and defeat any claim that common evidence will predominate.[11]

Finally, in *Torres v. Gristede's Operating Corp.*, plaintiffs alleged misclassification based on their allegations that (a) they were not paid on a salary basis and (b) they did not perform the requisite duties. 2006 WL 2819730, at *9. The district court found that common issues would

---

[10] Plaintiffs also cite *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330 (S.D.N.Y. 2004). However, *Noble* confirms the unwillingness of courts to certify a class where there is a need for individual inquiry into work duties. Plaintiffs sought a class of cooks, clerks, cashiers, and dishwaters. *Id.* at 336. But one of the named plaintiffs was a supervisory chef and thus arguably exempt. *Id.* at 335. Finding that this defense threatened to become the focus of the litigation as to his claim, the court held that he could not represent the class. *Id.* at 343.

[11] The central role of the executive exemption here also distinguishes this action from the other New York actions cited by Kopera: *Jankowski v. Castaldi*, No. 01 CV0164 (SJF)(KAM), 2006 WL 118973 (E.D.N.Y. Jan 13, 2006) (class of manual laborers); *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144 (S.D.N.Y. 2002) (seafarers on cruise ships); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001) (unskilled workers). In each of these actions a class was certified, but none involved the executive exemption.

predominate since the question of whether the salary basis test was satisfied could be determined through common evidence, and such a common finding would establish class-wide liability. *Id.* at *14, *16. But here, plaintiff makes no claim that Home Depot failed to pay ASMs in training on a salary basis.

      B.    <u>A Class Action Is Not Superior</u>

Home Depot "has a right to litigate its defenses against each []ASM." *Novak v. Home Depot,* 259 F.R.D. at 116. Given the differences in ASM training experience, litigating these defenses in a class action would require mini-trials regarding what each ASM did during the training period, requiring extensive analysis of the work performed by every class member and straining judicial resources. In short, a class action is simply not manageable and therefore not superior, where "separate mini-trials are required" to decide liability. *Id.* at 114.

Moreover, the employees plaintiff seeks to represent have alternatives available to them. First, they can pursue an individual claim in state court and seek full relief including liquidated damages.[12] Second, the employees can file an administrative complaint. "The availability of this administrative process, and its focus on the particulars applicable to each employee's claim, make [an administrative claim] in many ways a superior method by which the claims made by plaintiffs, and the proposed members of the class, can be pursued." *Alix v. Wal-Mart Stores, Inc.*, 57 A.D.3d 1044, 1048, 869 N.Y.S.2d 372 (N.Y. 2008).

IV.    <u>CONCLUSION</u>

For the reasons set forth above, the Court should deny the motion for class certification.

---

[12]  Plaintiff has waived any right to seek liquidation damages in this litigation. (Pl.'s Mem. at 24-25.)

Dated:  May 12, 2010                          Respectfully submitted,

                                              By: _____/s/ Joshua B. Waxman_____
                                                Joshua B. Waxman (JW 6806)
                                                Joel M. Cohn (*Pro Hac Vice*)
                                                William F. Allen (*Pro Hac Vice*)
                                                AKIN GUMP STRAUSS HAUER & FELD LLP
                                                1333 New Hampshire Avenue, NW
                                                Washington, DC  20036-1564
                                                (202) 887-4000 (telephone)
                                                (202) 887-4288 (facsimile)
                                                Email:  jwaxman@akingump.com

                                                Lauren H. Leyden (LL-0937)
                                                AKIN GUMP STRAUSS HAUER & FELD LLP
                                                One Bryant Park
                                                New York, New York 10036
                                                (212) 872-1000 (telephone)
                                                (212) 872-1002 (facsimile)
                                                Email:  lleyden@akingump.com

                                                Attorneys for defendant Home Depot U.S.A., Inc.